<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                            :
**CAROL MARESCA,**                          :
                                            :
        **Plaintiff,**             :
                                            :          **Civil Action 10-1055 (ES) (SCM)**
    **v.**                             :
                                            :          <u>**OPINION**</u>
**THE PORT AUTHORITY OF NY & NJ,** :
**a Bi-state agency, et al.**               :
                                            :
        **Defendants.**            :
_____           :

<u>**SALAS, District Judge**</u>

**I.     INTRODUCTION**

Pending before this Court is Defendants, The Port Authority of NY & NJ ("Port Authority"), Ernesto Butcher ("Butcher"), Anthony Coscia ("Coscia"), Christopher Ward ("Ward"), Susan Bass Levin ("Levin"), Louis LaCapra ("LaCapra"), and Mary Lee Hannell's ("Hannell") (collectively, "Defendants") motion for summary judgment.  (Defs.' Mem. of Law in Supp. of Their Mot. For Summ. J. Pursuant to Fed. R. Civ. P. 56 ("Defs.' Mov. Br."), D.E. No. 153).[1]  Plaintiff Carol Maresca ("Plaintiff" or "Maresca") opposes the motion.  (Pl.'s Br. in Opp'n to Mot. For Summ. J. ("Pl. Opp. Br."), D.E. No. 154).  The Court has considered the parties' submissions made in support of and in opposition to the instant motion.[2]  This Court has

---

[1] The Court notes that Defendant Paul Blanco has not joined in this motion, and as a result, is not subject to the rulings made in this Opinion.

[2] On April 17, 2012, Defendants filed a reply brief.  (Defs.' Reply Mem. of Law in Further Supp. of Their Mot. For Summ. J. Pursuant to Fed. R. Civ. P. 56 ("Defs.' Reply Br."), D.E. No. 155).  The Court received two sur-replies from Plaintiff, (D.E. Nos. 156, 157), as well as a response letter from Defendants, (D.E. No. 158), and a reply letter from Plaintiff, (D.E. No. 159).  This Court will not consider these letters, because they were filed without leave of Court.  *See* L. Civ. R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned.").

jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The Court decides the motion on the papers without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## II.    BACKGROUND

Plaintiff worked for the Port Authority for approximately 25 years. (Pl.'s Resp. to Defs.' L. Civ. R. 56.1 Statement of Facts ("Pl. SMF") ¶ 1, D.E. No. 154-44). In May 2004, the Port Authority promoted Plaintiff to Assistant Director of Administration of its Public Safety Department ("PSD") and increased her salary from $106,000 to $123,000. (*Id.* ¶ 12). As Assistant Director of Administration, the Port Authority provided Plaintiff with an agency vehicle and gas charge card. (Pl.'s First Am. & Supp'l Compl. ("Pl.'s Am. Compl.") ¶ 16, D.E. No. 67). In February 2005, Plaintiff received a promotion supplement, which brought her salary to $135,000. (Pl. SMF ¶ 12). In June of 2005, Plaintiff's salary increased to approximately $145,000 when the Port Authority promoted her to Deputy Director of PSD. (*Id.* ¶ 13). A year later, she received a merit salary increase that brought her salary to approximately $152,000. (*Id.* ¶ 13). In May 2007, Plaintiff's salary increased to approximately $160,000. (*Id.*).

In August 2007, the Port Authority promoted Plaintiff to Deputy Director of PSD/Deputy Superintendent, Port Authority Police Department ("PAPD"), and her salary increased to $165,594. (*Id.* ¶ 14; Ex. E to Cert. of Rosemary Alito in Support of Defs.' Mot. for Summ. J. ("Alito Cert.") at D 000000045). Among other things, as Deputy Director of PSD/Deputy Superintendent, Plaintiff was "responsible for implementing and administering policies and programs as well as managing the administrative functions that support the police and PSD." (Pl. SMF ¶ 18). One year later, Plaintiff received a merit increase that brought her salary to

$171,392.  (Pl. SMF ¶ 15; Ex. E to Alito Cert. at D 000000045).   Plaintiff did not receive a merit increase in 2009.  (Pl. SMF ¶ 16; Ex. E to Alito Cert. at D 000000045).

In June 2009, LaCapra, Ward, Blanco, Levin, and Butcher held a meeting in which they discussed their concerns about the performance of the PSD.  (Pl. SMF ¶ 20).  Then, on June 23, 2009, Butcher advised Plaintiff that she was being reassigned to a newly-created Deputy Director position in the Technology Services Department ("TSD").  (*Id.* ¶ 26).  She was also transferred to a small office (previously held only by lower management), and was directed to return her agency vehicle.  (*Id.* ¶¶ 29, 30; Cert. of Carol Maresca ("Maresca Cert.") ¶¶ 26, 27, D.E. No. 154-22).

Plaintiff protested the reassignment, "asserting that her involuntary transfer was discriminatory, based on her sex."  (Pl. SMF ¶ 37; Pl.'s Am. Compl. ¶ 29).  Plaintiff claims that the reassignment "was so emotionally stressful and painful to her that it so severely aggravated her rheumatoid arthritis condition that" her doctor advised her not to report to work in her new position.  (Pl.'s Am. Compl. ¶ 30).  Plaintiff last reported to work at the Port Authority on or about July 5, 2009 and went on extended medical leave.  (Pl. SMF ¶ 38).

In July 2009, the Port Authority transferred Cifelli to Plaintiff's former position, Deputy Director PSD/Deputy Superintendent of PAPD.  (Pl. SMF ¶ 47).  Cifelli had been employed by the Port Authority since 2003.  (*Id.* ¶ 49).  Plaintiff alleges that Cifelli's salary was $209,768, which was approximately $38,000 more than Plaintiff last made in the same position.  (Pl. Opp. Br. 8; Ex. P to Decl. of Gary Trachten in Opp. to Defs.' Mot. for Summ. J. ("Trachten Decl.")).[3]

---

[3] Defendants state that Cifelli's salary in this position was $208,768.  (Def. Mov. Br. 14).  The Court does not find the difference between $209,768 and $208,768 germane to its ruling.  The Court notes, for purposes of deciding Defendant's motion, that Cifelli made approximately $38,000 or $37,000 more than Plaintiff did in her last position at the Port Authority.

In September 2009, Plaintiff filed a charge alleging sex discrimination against the Port Authority with the United States Equal Employment Opportunity Commission ("EEOC"). (Pl.'s Am. Compl. ¶ 32). Port Authority was advised of the charge in October 2009. (Pl.'s Am. Compl. ¶ 33).

In September 2010, Cifelli resigned from the Port Authority and Gerarld Speziale ("Speziale") joined the Port Authority earning a salary of $198,510. (Pl. SMF ¶¶ 60, 63). In January 2011, Superintendent Michael Fedorko ("Fedorko") announced a reorganization with PSD. (*Id.* ¶¶ 66, 70).

Plaintiff filed her initial Complaint on March 3, 2010, (D.E. No. 1), and amended her Complaint on February 8, 2011, (D.E. No. 67). In her Amended Complaint, Plaintiff asserted that Defendant Port Authority violated her rights under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. §§ 206(d)(1) and 215(a)(3). (Pl.'s Am. Compl. ¶¶ 63-69). Plaintiff also asserted that Defendants violated her rights under the United States Constitution pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl. ¶¶ 70-82). Defendants filed the instant motion seeking summary judgment on April 13, 2012.

## III.    Legal Standard

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010) (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (*en banc*) (citing Fed. R. Civ. P. 56)). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012) (citation omitted). "Once the moving party points to evidence demonstrating no issue

4

of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216.  "In determining whether summary judgment is warranted '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *DeShields*, 463 F. App'x at 119 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV.     Discussion

In the instant action, Plaintiff asserts that Defendant Port Authority violated her rights under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. §§ 206(d)(1) and 215(a)(3) (First Count). (Pl.'s Am. Compl. ¶¶ 63-69).  Plaintiff also asserts that Defendants violated her rights under First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 (Second Count).  (Pl.'s Am. Compl. ¶¶ 70-82).   Below, the Court finds that genuine issues of material fact exist as to Plaintiff's EPA claim under § 206(d)(1) and her Equal Protection claim under § 1983.[4]  The Court, however, also concludes that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law as to Plaintiff's retaliation claim under 29 U.S.C. § 215(a)(3), as well as Plaintiff's First Amendment right to petition and Due Process claims under 42 U.S.C. § 1983.

### A.  Equal Pay Act Claims

#### i.  EPA, 29 U.S.C. § 206(d)(1)

##### a.  *Prima Facie* Case of Discrimination Under the EPA

In Count One of Plaintiff's Amended Complaint, Plaintiff claims that the Port Authority paid her less than male employees for substantially equal work on account of her gender, in

---

[4] The Court reserves on the limited issue of the Port Authority's individual liability under § 1983.

violation of the EPA, 29 U.S.C. § 206(d)(1).  (Pl.'s Am. Compl. ¶ 65).  The EPA states, in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (emphasis in original).  To establish a *prima facie* case of discrimination under the EPA, a plaintiff must show that (1) employees of opposite genders were paid unequally (2) for equal "work of substantially equal skill, effort and responsibility," (3) "under similar working conditions."  *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974); *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).

The pertinent issue is not the "name under which the position was classified but what was actually done."  *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 155 (3d Cir. 1985).  "The crucial finding on the equal work issue is whether the jobs to be compared have a common core of tasks, *i.e.*, whether a significant portion of the two jobs is identical."  *Id.* at 156 (internal quotation marks omitted); *Usery v. Allegheny Cnty. Inst. Dist.*, 544 F.2d 148, 152 (3d Cir. 1976), *cert. denied*, 430 U.S. 946 (1977).  If a court determines that the jobs share a common core of tasks, "[t]he inquiry then turns to whether the differing or additional tasks make the work substantially different." *Brobst*, 761 F.2d at 156.

6

In determining whether the jobs are similar, courts consider whether the tasks "require similar quality and quantity of production, education, relevant prior work experience, conduct and skill." *Dubowsky v. Stern, Lavinthal, Norgaard & Daly*, 922 F. Supp. 985, 990 (D.N.J. 1996) (citing 29 C.F.R. § 1620.13). Courts should only consider the qualifications and skills necessary to perform the job, not the specific qualifications of the employees who occupy the positions. *Cox v. Office of Attorney Ethics of the Supreme Court of N.J.*, No. 05–1608, 2006 WL 3833470, at *6 (D.N.J. Dec. 29, 2006); *Hodgkins v. Kontes Chemistry & Life Scis. Prod.*, No. 98–2783, 2000 WL 246422, at *15 (D.N.J. Mar. 6, 2000) (observing that focus of inquiry is on job, not a comparison of individual abilities of employees). Courts should further rely on "actual job performance and content rather than job descriptions." *Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91, 95 (3d Cir. 2006). Ultimately, "because of the heavily fact-driven character of the inquiry, substantial equality must be determined on a case-by-case basis." *Id.*

Plaintiff identifies Cifelli and Speziale as comparators for EPA purposes. The Court finds that issues of fact exist as to whether Plaintiff and her two comparators performed "work of substantially equal skill, effort and responsibility." *Stanziale*, 200 F.3d at 107. Plaintiff claims that the "dual position of Deputy Director Public Safety/Deputy Superintendent Port Authority Police as occupied by both plaintiff and Arther Cifelli were equal and/or substantially equal in skill, effort and responsibility." (Reply to Pl.'s Resp. to Defs.' L. Civ. R. 56.1 Statement & Resp. to Pl.'s Suppl. Statement Pursuant to L. Civ. R. 56.1 ("Defs.' SMF Resp.") 30 ¶ 1).[5] The Port Authority admits that Cifelli succeeded Plaintiff in the same title but dispute that Cifelli's role was "substantially equal in skill, effort and responsibility" by submitting organizational

[5] In an improper sur-reply, Plaintiff objects to Defendants' reply statements to Plaintiff's Response to Defendants' Local Rule 56.1 Statement in a sur-reply. The Court need not rule on whether Defendants' reply statements were proper. Notwithstanding, the Court only relies on Defendants' Response to Plaintiff's Supplemental Statement of Disputed Material Facts and finds that the reply statements are not dispositive.

7

reporting structure charts under both Plaintiff and Cifelli's leadership.  (*Id.*; Ex. O to Trachten Decl.).   The organizational charts reveal that Plaintiff and Cifelli may have different job responsibilities.  (Ex. O to Trachten Decl.).   Although both Plaintiff and Cifelli occupied the same dual title, the organizational chart under Cifelli has been restructured and eliminates certain responsibilities.  (*Id.*; *see also* Maresca Cert. ¶ 11).  The Port Authority explains that Cifelli's job "focused on police operations and security whereas plaintiff's job responsibilities were primarily administrative in nature."   (Ex. O to Trachten Decl.; Defs.' Reply Br. 2).   Under these circumstances, the Court finds that there are disputed questions of fact whether Plaintiff and Cifelli performed equal work.  *See, e.g., Cox*, 2006 WL 3833470, at *4 (denying summary judgment on an EPA claim where questions of fact existed as to whether the work was substantially equal).

As to Speziale, the Port Authority asserts that Speziale's position and responsibilities were different as Deputy Superintendent of PAPD and that he was responsible for uniform staff, certain civilian staff in the police department and overall police activities.  Specifically, the job was reflective of Speziale's extensive law enforcement background and skills that Plaintiff did not possess. (Pl. SMF ¶¶ 64, 66).   Plaintiff asserts that Speziale had additional job responsibilities that made their jobs similar and that he initially succeeded to the same duties and responsibilities that had been Cifelli's until Superintendent Michael Fedorko ("Fedorko") announced a reorganization within the PSD in January 2011.  (*Id.* ¶¶ 66, 70).   Thus, as with Cifelli, the Court finds that material issues of fact exist, precluding summary judgment.

### b.  Affirmative Defenses Under the EPA

Although the Court finds there are issues of material fact, the Court will still consider whether the Defendant proved at least one affirmative defense.[6]   Once a plaintiff establishes her *prima facie* case, the burden of persuasion shifts to the employer to demonstrate that the differential payments were made pursuant to at least one of four affirmative defenses specified in the EPA.  *Stanziale*, 200 F.3d at 107 (citations omitted).  The four affirmative defenses are:  "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).  "Acceptable factors other than sex include education, experience, prior salary, or any other factor related to performance of the job." *Dubowsky*, 922 F. Supp. at 990.  At this stage of the inquiry, the Court may compare the abilities and qualifications of the particular employees who filled the jobs.  *Id.*

On summary judgment, "the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary."  *Stanziale*, 200 F.3d at 107 (internal quotation marks and citation omitted).  Consequently, "an employer must submit evidence from which a reasonable factfinder could conclude that the proffered reasons actually motivated the wage disparity."  *Id.* at 108.   Evidence that merely "*could* explain the wage disparity" is insufficient; rather "the proffered reasons" must "explain the wage disparity." *Id.* at 107–08

---

[6] Plaintiff argues that the Port Authority waived its EPA affirmative defenses by failing to timely plead them in the initial Answer or by seeking leave of Court.  (Pl. Opp. Br. 28-31).  Defendant argues that they did not waive their affirmative defenses to the EPA claim because it timely pled the defense in its initial Answer by asserting that Defendant's actions were taken for legitimate business reasons, and then again with more specificity in its Answer to the Plaintiff's First Amended Complaint.  (Defs.' Reply Br. 9-12).  Defendant also contends that Plaintiff previously raised this issue before Judge Patty Shwartz and the Court permitted contention interrogatories to cure any claim of lack of notice.  (*Id.* at 10-11; Ex. D to Reply Cert. of Rosemary Alito, Esq. in Further Support of Defs.' Mot. for Summ. J. ("Reply Alito Cert.") at 25:5-26:13).  The Court finds Plaintiff's argument tenuous because Plaintiff previously raised this issue, the Court permitted additional interrogatories to ameliorate any claim of lack of notice of the affirmative defenses, and Plaintiff did not object.

(emphasis in original).  If defendants succeed in proving at least one affirmative defense, the plaintiff may yet rebut the defense by offering evidence that the nondiscriminatory justification is a pretext for discrimination.  *Dubowsky*, 922 F. Supp. at 990.

This Court finds that questions of fact exist as to whether there were reasons other than gender that determined the salary differential.  The Port Authority defends its conduct by arguing that the salary differential between Plaintiff and Cifelli is due to the Port Authority's policy of allowing employees to retain their salaries when transferred to a different department.  (Defs.' Mov. Br. 14; Pl. SMF ¶ 55).  Plaintiff asserts that no written policy has ever been produced, that Port Authority's own witnesses have acknowledged that no policy can be found in any documents, and that evidence suggests that this was an *ad hoc* practice.  (Pl. Opp. Br. 8-10; Pl. SMF ¶¶ 55, 56).  Plaintiff contends that Cifelli's salary could not be explained solely by the Port Authority's salary retention policy because the Port Authority had reduced Cifelli's salary once before in 2005.  (Pl. Opp. Br. 9-10; Ex. P to Trachten Decl.).  Plaintiff also argues that Cifelli's reassignment was voluntary and not subject to this alleged policy.  In addition, Plaintiff claims that this policy does not exist because Levin sought to confirm that Plaintiff would retain her salary when Plaintiff was transferred.  The Court finds that genuine issues of material fact exist because (1) the existence of a true policy, as opposed to an *ad hoc* practice, is unclear, and (2) the existence of a policy like the one the Port Authority describes could potentially serve as a proper defense to Plaintiff's EPA claim using Cifelli as a comparator.  Accordingly, summary judgment is denied as to this claim.

As to Speziale, the Port Authority argues that he was "compensated at a rate in recognition of his salary history, experience in law enforcement, public safety and suitability for the position—all of which were unrelated to gender."  (Def. Reply Br. 26; Pl. SMF ¶ 64).  In

opposition, Plaintiff argues that "[i]nterrogatory responses and the deposition testimony of Hannell claim that Speziale was a political appointee and that his salary was dictated by the New Jersey Governor's office. However, Speziale testified that he applied for the job without political sponsorship and negotiated his own salary directly." (Pl. Opp. Br. 11; Pl. SMF ¶ 64). The Court finds that genuine issues of material fact exist as to whether the proffered reasons actually motivated the wage disparity. Therefore, summary judgment is denied as to this claim.

Accordingly, the Court will deny Port Authority's motion for summary judgment as it relates to the Equal Pay Act claim under 29 U.S.C. § 206(d)(1).

### ii.   Retaliation Claim Under EPA, 29 U.S.C. § 215(a)(3)

In her Amended Complaint, Plaintiff claims that the Port Authority (1) withheld a merit increase based on Plaintiff's 2008-2009 performance, (2) took away her automobile benefits, and (3) did not reassign Plaintiff to the vacancy created by Cifelli's departure in August 2010, because Plaintiff complained of sex discrimination, in violation of the EPA, 29 U.S.C. § 215(a)(3). (Pl.'s Am. Compl. ¶¶ 53, 58, 67). The Court notes that Plaintiff does not address Defendant's argument as to this claim.

Notwithstanding Plaintiff's silence, "[i]n order to establish a *prima facie* case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) (internal quotations marks and citations omitted). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce a "legitimate, non-discriminatory reason" for its actions. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). Thereafter, to

11

defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The Port Authority contends that Plaintiff cannot prove causation with regard to the denial of a merit increase in 2009 because such denial occurred before she submitted her complaint to the EEOC in the fall of 2009 and before she filed this lawsuit in March 2010. (Defs.' Mov. Br. 28). Plaintiff does not address this attack on causation—presumably because she cannot. Indeed, Plaintiff filed her complaint with the EEOC in September 2009—*after* she was denied the merit increase. Additionally, the Port Authority was notified of the complaint in October 2009. The Court, therefore, grants summary judgment in favor of the Port Authority as to the portion of Plaintiff's retaliation claim that concerns the merit denial in 2009.

Next, the Port Authority contends that the revocation of Plaintiff's vehicle similarly fails because she was asked to return her vehicle in June 2009—before she filed her EEOC complaint and the Port Authority was notified of the charges. (*Id.* 29). Again, Plaintiff does not address, let alone oppose, the Port Authority's argument as to the vehicle perks. The Court grants summary judgment in favor of the Port Authority as to the portion of Plaintiff's retaliation claim that concerns the revocation of the vehicle and gas card benefits.

Finally, the Port Authority argues that the decision not to reassign Plaintiff to the vacancy created by Cifelli's departure in August 2010 was the result of Plaintiff's impropriety for that role. The Port Authority contends that Plaintiff had been removed from that position roughly one year earlier in order to "effectuate a management change and new direction." (*Id.* 29-30).

12

She was not reassigned to that position upon Cifelli's departure because "the Deputy Superintendent position took on an operational (versus administrative) dimension and was filled by someone with extensive law enforcement experience." (*Id.* 30). Plaintiff has no law enforcement background, and, therefore, she was not qualified for the job as restructured in 2010. (*Id.*). Again, Plaintiff does not address, let alone oppose, the Port Authority's argument as to the vacancy and reassignment. The Court grants summary judgment in favor of the Port Authority as to the portion of Plaintiff's retaliation claim that concerns the Port Authority's decision not to reassign her to the vacancy left by Cifelli.

Because the material facts are undisputed, Plaintiff's retaliation claim fails as a matter of law.

### B. Section 1983 Claims

To establish a section 1983 civil rights claim, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of federal rights, privileges or immunities secured by the Constitution. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Torres v. Davis,* No. 12-3068, 2012 WL 6019090, at *2 (3d Cir. Dec. 4, 2012). In Count Two of Plaintiff's Amended Complaint, Plaintiff asserts that Defendants violated § 1983 by infringing on her First Amendment right to petition and her Due Process and Equal Protection rights under the Fourteenth Amendment. (Pls.' Am. Compl. ¶¶ 70-82). Defendants do not dispute that they were acting under the color of state law. Therefore, the Court considers whether there is a genuine issue of material fact as to the alleged violations of the First and Fourteenth Amendments.

### i. Petition Clause

In Count Two of the Amended Complaint, Plaintiff contends that Defendants violated §
1983 by violating her First Amendment right to petition the Government for a redress of
grievances. (Pls.' Am. Compl. ¶¶ 70-82). Specifically, she asserts that Defendants retaliated
against her for filing a lawsuit and an EEOC charge. To establish a First Amendment retaliation
claim, based upon the Petition Clause, a plaintiff must prove (1) that the First Amendment
protected the conduct, (2) that a state actor responded with a retaliatory action, and (3) that the
protected activity was a substantial motivating factor in the retaliation. *Warwas v. City of
Plainfield,* No. 11-1736, 2012 WL 3024423, at *3 (3d Cir. July 25, 2012); *Brightwell v. Lehman*,
637 F.3d 187, 194 (3d Cir. 2011). Plaintiff cannot prove that her EEOC complaint in the fall of
2009 or her filing of this lawsuit in March 2010 were substantial motivating factors in the alleged
retaliation. Her reassignment and denial of merit increase took place before she filed the EEOC
complaint and this lawsuit. (Defs.' Mov. Br. 28). Because Plaintiff fails to cite to any material
facts from which a factfinder could find retaliation, Plaintiff's Petition Clause claim fails as a
matter of law.[7]

### ii. Due Process Rights

Plaintiff also contends that Defendants violated § 1983 by violating her Due Process
rights under the Fourteenth Amendment. (Pl.'s Am. Compl. ¶¶ 70-82). Defendants argue that
Plaintiff "has no property right or liberty interest in the Deputy Director position to render it
protected by substantive or procedural due process" because at-will employees have no property

---

[7] The parties argue over whether Plaintiff's claim is foreclosed by *Borough of Duryea, Pa. v. Guarnieri*, __U.S.__,
131 S. Ct. 2488, 2500 (2011) and specifically whether Plaintiff must demonstrate that her underlying "petition"
relates to a matter of public concern. (Defs.' Mov. Br. 32-33; Pl. Opp. Br. 36-41; Defs.' Reply Br. 13-17). The
Court does not need to address this issue because it finds that her EEOC complaint and the instant lawsuit could not
have been a contributing factor in the alleged retaliation.

interest in their jobs and employment decisions short of termination never involve protectable property interests. (Defs.' Mov. Br. 33-35).    Plaintiff does not address, let alone oppose, Defendants' arguments on Due Process.

To prevail on a substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies."  *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000). In *Nicholas,* the Third Circuit stated that public employment, unlike real property interests, is not a fundamental right worthy of substantive due process protection.  *Id.* at 142-43; *see also Bishop v. Wood,* 426 U.S. 341, 349 (2000) (observing that "Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions" and employment decision short of termination are not protectable property interests); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1259 (3d Cir. 1994) ("It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.") (internal quotation marks and citation omitted).  Similarly, a procedural due process violation is also dependent upon a denial of a constitutionally-protected interest, which does not exist here. *Piecknick*, 36 F.3d at 1256.  Accordingly, the Court grants summary judgment in favor of Defendants on the Due Process claim.

### iii.  Equal Protection Rights

Plaintiff further avers that Defendants violated § 1983 by violating her Equal Protection rights under the Fourteenth Amendment.   (Pl.'s Am. Compl. ¶¶ 70-82).   Plaintiff's Equal Protection Clause claim via § 1983 is analyzed using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See id.* at 800 ("The critical issue before us concerns the order and allocation of proof in a private, non-class action challenging employment

15

discrimination."); *Stewart v. Rutgers, the State Univ.*, 120 F.3d 426, 431-32 (3d Cir. 1997). Plaintiff must first establish a *prima facie* case of gender discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once plaintiff has established a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the action taken. *Id.* If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the stated reason is merely a pretext for discrimination. *Id.* at 804. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To make out a *prima facie* claim for employment discrimination, a plaintiff must show: "(1) she belongs to a protected class, (2) she was qualified for the position in question, (3) she was subjected to an adverse employment action, and (4) the existence of circumstances which give rise to an inference of prohibited discrimination." *See Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 814 (3d Cir. 2010) (citations omitted). To make a *prima facie* case of gender discrimination under the Equal Protection Clause, plaintiff must show purposeful discrimination. *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Plaintiff must prove that she "'receiv[ed] different treatment from that received by other individuals similarly situated' and that the disparate treatment was based upon her gender." *Id.* (citation omitted).

Defendants argue that Plaintiff's *prima facie* case fails because (1) "a lateral transfer with no change in salary does not constitute an adverse employment action[,]" and (2) there is no evidence that any of the individual defendants "treated plaintiff differently from similarly situated males because she was a female." (Defs.' Mov. Br. 36).

16

Plaintiff contests that her reassignment was not merely a lateral transfer.  (*Id.* 36-38). Specifically, Plaintiff cites to testimony by Levin that she knew that Plaintiff would, as Deputy Director of the TSD, operate in a "smaller department," with a "smaller budget," and would "seem to [Levin] to be somewhat less demanding."  (Ex. H to Tracten Decl. at 77; Defs.' SMF Resp. 32-33 ¶¶ 3-4; Pl. SMF ¶¶ 29, 30; Maresca Cert. ¶¶ 26, 27).  Further, Plaintiff contends that the position in TSD was created for Plaintiff, as evidenced by the absence of the Deputy Director position in the 2006 and 2007 budget statements.  (Ex. T to Trachten Decl.; Defs.' SMF Resp. 31 ¶ 2).  Although Plaintiff acknowledges that her salary did not change, she argues that her automobile perk was taken away – "resulting in a reduction in her compensation."  (Pl. Opp. Br. 44).  Further, Plaintiff contends that the "Port Authority's own documentation showed the job to which she was being transferred as comparable not to her dual position in PSD, but rather her earlier Assistant Director PSD position."  (*Id.* 44-45; Ex. H to Maresca Cert. ¶¶ 38-39).  Plaintiff contends that this matter should be sent to a jury because there is a genuine issue of fact as to whether Plaintiff's transfer was adverse.

Defendants contend that none of the purported actions taken against Plaintiff are truly adverse.  (Defs.' Reply Br. 17-18).  Defendants provide several non-discriminatory reasons for Plaintiff's transfer.  First, transfers of males and females at the executive level routinely occurred at the Port Authority to fulfill agency needs.  Second, Cifelli—who previously held very high-level positions at the Port Authority—was paid more than Plaintiff because of the Port Authority's policy to maintain executives' salaries upon a transfer.  (Pl. SMF ¶ 55; Defs.' Mov. Br. 38).  Third, Speziale's law enforcement experience—which Plaintiff did not have—"enabled him to perform a completely different job than plaintiff (and Mr. Cifelli), as envisioned by Superintendent Fedorko and Port Authority Executives."  (Pl. SMF ¶ 64; Defs.' Mov. Br. 38-39).

17

Defendants explain that Plaintiff was transferred because of her alleged failure to respond to overtime control and other budgetary matters articulated by executives, and because of a need for her in TSD.  (Pl. SMF ¶¶ 20, 22-25, 28, 32-36).

Plaintiff argues that the reasons provided by Defendants are mere pretext.  Specifically, she argues that (1) there is a "complete dearth of any documented criticism of Maresca's performance in PSD," (2) only weeks before her transfer, Butcher complemented Maresca in an email on the work she had done on overtime issues, (3) former Inspector Preston Fucci explained that the Executive Director complemented the work performed by the unit created for overtime control, and (4) that she had not been alerted to any claim of substandard performance of the issue.  (Pl. Opp. Br. 45-46).  Specifically, Plaintiff claims that Defendants never told her that: (1) her job performance was deficient, (2) there were problems relating to overtime, (3) she failed to implement their recommendations, or (4) she needed to change the "mission" of the PSD.  (Pl. SMF ¶¶ 21-23; Maresca Cert. ¶¶ 13, 14, 17, 21).  On the contrary, Plaintiff notes that she received only positive feedback and, in fact, "overtime was cut by almost ten million dollars in the first eight months of 2009" before she was transferred, which reflected a 25% decrease from 2008 to 2009.  (Maresca Cert. ¶¶ 13, 14, 17, 21).  Fucci's certification "shows a high level of planning and progress with respect to reduction of overtime and overtime expense in the PSD during the more than 6 months just prior to Maresca's removal."  (*Id.* 46; Pl. SMF ¶¶ 21, 23; Certification of Preston Fucci ("Fucci Cert.")[8] ¶¶ 3-5, 7-15, 17-18, D.E. No. 154-33).  Further, Inspector Fucci stated that Cifelli demonstrated a lack of knowledge about the overtime challenges in PSD.  (Pl. Opp. Br. 46-47; Fucci Cert. ¶ 16).

---

[8] Defendants state that Plaintiff never produced the documents attached to Fucci's Certification.  This Court finds it sufficient to rely on the Certification of Preston Fucci, which raises issues for the factfinder.

The Court finds that a genuine issue of material fact does exist as to whether an adverse employment decision was made against Plaintiff.   Although Plaintiff received the same compensation in the TSD position and held the same title, she offers the testimony of Levin who describes the TSD position as being essentially less desirable because TSD was a "smaller department," with a "smaller budget," and was "less demanding."  *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000) (genuine issue of material fact existed where Plaintiff's new position had equivalent compensation and the opportunity for advancement and promotions were the same as other positions, but Plaintiff believed her position was the least desirable because it dealt in new markets).

The Court further finds that there are genuine issues of material fact as to Defendants' motives in assigning Plaintiff to the TSD role.  *Id.* at 321 ("In an employment discrimination case 'a trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue.'") (citation omitted).   Plaintiff's evidence calls into question Defendants' proffered reasons for transferring Plaintiff.   Reviews of her work on the overtime issue and performance in general prior to her transfer are conflicting and, therefore, this matter should be resolved by a jury.  (Pl. SMF ¶¶ 21-23; Defs.' SMF Resp. 30 ¶ 5; Maresca Cert. ¶¶ 13, 14, 17, 21).   For example, although Defendants offer evidence indicating that executives were unhappy with Plaintiff's performance on the overtime issue, Plaintiff counters with evidence that only weeks before her transfer, Butcher complemented her in an email on the work she had done on overtime issues and former Inspector Fucci submitted that the Executive Director complemented the work performed by the unit created for overtime control.   Accordingly, summary judgment is denied as to the Equal Protection claim.

### iv.  Section 1983 Liability as to the Port Authority and the Individual Defendants

Plaintiff asserts that the Port Authority[9] and individual Defendants may be held individually liable under § 1983.  (Pl's. Am. Compl. ¶¶ 80-81).  Defendants disagree.  (Defs.' Mov. Br. 40-43).  With respect to the individual defendants, "'[a] defendant in a civil rights action must have personal involvement in the alleged wrongs [whether] by 'personal direction or . . . actual knowledge and acquiescence.'"  *Shipman v. S. Brunswick Twp.*, No. 07-1107, 2010 WL 1372297, at *3 (D.N.J. Mar. 31, 2010) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Defendants argue that Plaintiff offers no evidence that the individual Defendants—specifically Ward, Bass Levin, Butcher and LaCapra—had a specific intent to deny her constitutional rights because she is a woman.  As to Coscia and Hannell, Defendants claim that they were not involved in the decision to transfer Plaintiff, and that Plaintiff does not even contend that Coscia or Hannell treated her unfairly because of her gender.

As to Defendants Ward, Levin, Butcher and LaCapra, the record shows that they were involved in the decision to transfer Plaintiff and issues of fact exist as to whether their motive and intent was discriminatory.  It is undisputed that LaCapra, Ward, Blanco, Levin, and Butcher held a meeting in June 2009 in which they discussed their concerns about the performance of the PSD.  (Pl. SMF ¶ 20).  Shortly thereafter, Butcher advised Plaintiff that she was being reassigned

---

[9] The Port Authority may be held liable under § 1983 only when the "execution of a government's policy or custom" inflicted the alleged injury.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978); *Bielevicz v. Dubinon*, 915 F.2d 845, 849-850 (3d Cir. 1990) (stating that "liability may not be proven under the respondeat superior doctrine, but must be found upon evidence that the government unit itself supported a violation of constitutional rights").  Plaintiff must also prove that the custom or practice was the proximate cause of the injuries suffered. *Bielevicz*, 915 F.2d at 850.  In the instant matter, Plaintiff has failed to directly respond to whether the Port Authority can be held liable under § 1983.  The Court chooses to reserve on whether there are sufficient issues of fact to show that the Port Authority may be responsible for "either the affirmative proclamation of a policy or acquiescence in a well-settled custom" of discriminating against women and that this practice was the proximate cause of the injuries suffered.  (*Id.*).  The Court finds that it will benefit from oral argument on this limited issue. New arguments and evidence will not be permitted.

to a newly-created Deputy Director position in the TSD, which position was less desirable.  (Pl. SMF ¶¶ 26, 29, 30; Maresca Cert. ¶¶ 26, 27).  Plaintiff disputes Defendants' contention that their directives were not being carried out to their satisfaction and that no progress was being made to the overtime concerns.  (Pl. SMF ¶¶ 21-23; Fucci Cert. ¶¶ 13-15, 18; Maresca Cert. ¶¶ 13, 16-18).  Accordingly, issues of material fact remain as to whether LaCapra, Ward, Levin and Butcher were personally involved in the alleged wrongs by personal direction or acquiescence.

As to Defendant Hannell, Plaintiff merely states that Hannell (1) was asked to create a job description for Plaintiff, (2) was "aware" of the transfer, (3) was responsible for "administering the salary policy," and (4) had Plaintiff's 2009 merit increase on her desk.  (Pl. Opp. Br. 5; Ex. C to Alito Cert. at 231:19-234:7).  A factfinder cannot reasonably find from these facts, alone, that Hannell was personally involved with the intent to discriminate against Plaintiff.  As to Defendant Coscia, Plaintiff has not provided this Court with any evidence of his personal involvement in any action against Plaintiff.   Accordingly, this Court finds that Defendants Ward, Levin, Butcher and LaCapra are not entitled to summary judgment on the surviving § 1983 claim.  The Court further holds that Defendants Hannell and Coscia are entitled to summary judgment as a matter of law.

### C.  Federal Rule Civil Procedure 56(d) Relief

Plaintiff is not entitled to relief under Federal Rule Civil Procedure 56(d).  Rule 56(d) (titled "When Facts Are Unavailable To the Nonmovant") provides when a nonmovant cannot, for reasons specified in a declaration or affidavit, present essential facts to justify its opposition, the Court may defer the motion, deny it, allow time to obtain discovery or issue another appropriate order.  Fed. R. Civ. P. 56(d).  Plaintiff's counsel submits a draft certification that Beecher refused to sign, but that counsel represents includes statements that Beecher stated in an

interview.  (Pl. Opp. Br. 47).   Although Plaintiff first claims that the draft affidavit is not necessary to defeating summary judgment, Plaintiff nonetheless seeks to depose Beecher.  (*Id.* 48; Decl. of Alisa Fermaglich in Opp. to Summ. J. ("Fermaglich Decl.") ¶¶ 7-8).   Defendants argue that Plaintiff's counsel should not have submitted or relied upon the unsigned affidavit, because Beecher disavowed the affidavit, refusing to sign it and accusing Plaintiff's counsel of harassment.  (Defs.' Reply Br. 23-26).

This Court denies Plaintiff's request.  As the title notes in Rule 56(d), this relief is available to nonmovants who have not had a reasonable opportunity to take discovery to gather evidence that is necessary to oppose the motion.  Here, Plaintiff had ample opportunity to seek discovery since the filing of the initial Complaint in March 2010.   (*See* D.E. No. 1).   Additionally, Plaintiff improperly attempts to submit an unsigned, draft affidavit.  Yet, the facts, by Plaintiff's own admission, are not essential to opposing this motion.   Accordingly, the Court will not grant relief under Rule 56(d).

## V.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in part, and GRANTED in part.  An appropriate order shall accompany this opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

22